UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------x

BRENDA HAYDEE TORRES,

              Plaintiff,

   -against-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

              Defendant.

---------------------------------------------------x

**MEMORANDUM AND ORDER**
16-CV-02354 (FB)

*Appearances:*
*For the Plaintiff:*
ANN P. BIDDLE
EMILY K CORCIONE
Queens Legal Services
89-00 Sutphin Blvd., Ste. 206
Jamaica, NY 11435

*For the Defendant:*
BRIDGET M. ROHDE
Acting United States Attorney
Eastern District of New York
271 Cadman Plaza East, 7th Floor
Brooklyn, New York 11201

By:   MATTHEW SILVERMAN
       Assistant U.S. Attorney

**BLOCK, Senior District Judge:**

Brenda H. Torres ("Torres"), who formerly worked as a housekeeper and home health aide, seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability benefits under the Social Security Act. Both parties move for judgment on the pleadings. For the reasons

stated below, the Commissioner's motion is denied, Torres's motion is granted, and

the case is remanded for a calculation of benefits.

**I.**

In June 2013, Torres filed an application for Disability Insurance Benefits,

alleging disability, as of November 5, 2012, from bipolar disorder, depression,

anxiety, asthma, and musculoskeletal impairments. The Social Security

Administration denied her application, and she had a hearing before an Administrative

Law Judge ("ALJ"), where she appeared *pro se*. Applying the familiar five-step

evaluation process,[1] the ALJ determined that: (1) Torres had not engaged in

substantial gainful activity from November 5, 2012, through December 31, 2014, the

date she was last insured for disability benefits under the Act; (2) her "mood disorder"

and "anxiety disorder" constituted severe impairments; but (3) they did not meet or

medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P,

---

[1] Social Security Administration regulations establish a five-step process for evaluating disability claims. The Commissioner must determine "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *McIntyre v. Colvin*, 748 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)(v)). The burden of proof is on the claimant in the first four steps, but shifts to the Commissioner at the fifth step. *Id.* At the fifth step, the Commissioner "need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (citing 20 C.F.R. § 404.1560(c)(2)).

Appendix 1.

The ALJ then determined that Torres had the residual functional capacity ("RFC") to perform the full range of work at all exertional levels with certain nonexertional limitations. Applying this RFC to the remaining steps, the ALJ determined that (4) Torres was unable to perform her past relevant work as a home health aide and a housekeeping cleaner, but (5) there were jobs existing in significant numbers in the national economy that Torres could perform, namely stores laborer, linen room attendant, and photocopy machine operator.

The Appeals Council denied Torres's request for review, rendering final the ALJ's decision to deny benefits. Torres timely sought judicial review.

**II.**

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). Torres argues that the ALJ failed to develop the record. The Court agrees. Furthermore, consideration of the complete medical record

demonstrates that Torres satisfied the listing criteria for Anxiety Disorders.

## A. Development of the Medical Records

The ALJ is required "to develop [a claimant's] complete medical history for at least a twelve-month period if there was reason to believe that the information was necessary to reach a decision." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (citing 20 C.F.R. § 416.912(d)(2)). Development of a complete medical history is particularly important when a mental impairment is involved because the "assessment of functional limitations" requires a "longitudinal picture of [the claimant's] overall degree of functional limitation." 20 C.F.R. § 404.1520a(c)(1). The ALJ has a heightened duty to develop the record where, as here, the claimant appears at the hearing without counsel. *See Gold v. Sec'y of Health, Ed. & Welfare*, 463 F.2d 38, 43–44 (2d Cir. 1972). The ALJ's duty is further heightened here because Torres was illiterate, making it impossible for her to review her own medical records for completeness.

The medical records before the ALJ included barely three of the 12 months preceding Torres's application for benefits. Even for those three months, many records were missing. The file contains no statement from a treating medical source regarding Torres's functional limitations, a troubling omission from a record already riddled with holes. The ALJ made no effort to develop the record further. The lack of development in the record is particularly troublesome for another reason: The

Commissioner's medical expert, Dr. Efobi, testified that available records contained "strong suggestions" that Torres satisfied the listings for both Bipolar Disorder and Post-Traumatic Stress Disorder ("PTSD") but there was "not enough to satisfy the listing[s]." AR at 716-17. Such testimony in the face of a sparse medical record should have prompted the ALJ to further develop it. The ALJ erred by failing to do so.

Torres obtained counsel before she requested review from the Appeals Council. She acquired many of the missing medical records and submitted them to the Appeals Council, but it held that they did not undermine the ALJ's decision. The Court disagrees.

Additional medical records submitted to the Appeals Council showed that Torres was diagnosed with PTSD in July 2013, just a few months before she applied for disability benefits. Another new medical record of psychiatric treatment in September 2013 states that Torres was not sleeping, had extreme anxiety, and was afraid to be alone. Further new evidence showed that Torres was repeatedly diagnosed with PTSD in the time between her application for benefits and her date last insured. One record shows that, in September 2013, she stopped taking her medication for a week and told her therapist that she "wanted to kill someone and yank their eyeballs out." AR at 1479. This new evidence is material. Combined with the existing record, as discussed further below, it shows that Torres's PTSD met the

criteria for listing 12.06, relating to anxiety disorders.

## B. Listing for Anxiety Disorder

The ALJ held that Torres did not satisfy listing 12.06 based primarily on the medical evidence and the testimony of the Commissioner's non-examining medical expert, Dr. Efobi. However, as discussed above, the medical record was incomplete. And Dr. Efobi's assessment was seriously flawed. First, his testimony was based solely on the incomplete record before the ALJ. Second, it rested on the assumption that Torres would remain compliant with her extensive regime of psychiatric medications.[2] However, "[f]ederal courts have recognized that failure to comply with treatment can be a direct result of bipolar disorder." *Jimmeson v. Berryhill*, 243 F. Supp. 3d 384, 391 (W.D.N.Y. 2017) (collecting cases). Torres's testimony and the entire record show that she struggled with compliance. Dr. Efobi's failure to consider symptomatic noncompliance and deterioration seriously undermines the probative value of his testimony. Given these errors, the ALJ's conclusion that Torres did not meet listing 12.06A was not supported by substantial evidence.

The complete record, including new evidence submitted to the Appeals Council, shows that Torres met the listing criteria for PTSD. To satisfy listing 12.06, "Anxiety Related Disorders," the claimant must meet the requirements of sections 12.06A and

---

[2] Dr. Efobi acknowledged that Torres "probably wouldn't be able to work if she's not taking her meds." AR at 721.

either 12.06B or 12.06C. 20 CFR Pt. 404, Subpt. P, App. 1, § 12.06A-C (2015). Section 12.06A requires medically documented findings of at least one of the following: (1) generalized persistent anxiety; (2) a persistent irrational fear and avoidance of a specific object, activity, or situation; (3) severe panic attacks occurring at least once a week; (4) obsessions or compulsions that are a source of marked distress; or (5) recurrent recollections of a traumatic experience that are a source marked distress.

Torres satisfies 12.06A because she experienced recurrent recollections of a traumatic experience. She was sexually abused by her stepfather from age two to fourteen, when she ran away from home. She was also raped as a teenager and forced by her family to marry her rapist. During therapy sessions, she repeatedly recalled these traumas and reported recurrent nightmares and other forms of "marked distress." For example, she experienced persistent anxiety and paranoia, which, contrary to the medical expert's testimony, returned even after medication. In September 2013, she reported extreme anxiety, frequent crying, lack of sleep, and a sense of "impending doom." AR at 1336. At her hearing, she reported weekly or bi-weekly panic attacks. She attempted suicide twice before the alleged date of onset of disability. This evidence shows that Torres satisfies section 12.06A.

Section 12.06B requires that the symptoms from 12.06A result in at least two of the following limitations of mental functioning related to the impairment: (1)

marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. "Marked" means more than moderate but less than extreme. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders § C. The evidence here shows that Torres had marked restrictions in activities of daily living and marked difficulties in maintaining social functioning.

**1. Activities of Daily Living**

Activities of daily living include "adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders § C.1. Torres testified that she was "sometimes" able to cook, do laundry, and clean, but that her anxiety caused her to wake up every morning and close the windows "thinking somebody's going to come and get [her]." AR at 705. She described staying home in the dark without going outside, picking up the phone, or bathing. She also stated that it was difficult for her to take public transportation because she "jump[ed]" when other passengers came near her, causing her to think about hurting them. These symptoms were corroborated by repeated diagnoses of PTSD and panic disorder, as discussed above. Taken together, this evidence shows that Torres

experienced marked restrictions in activities of daily living.

## 2. Social Functioning

Impaired social functioning may be demonstrated by "a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 12.00 Mental Disorders § C.2. As the ALJ acknowledged, Torres mentioned no social contacts except a boyfriend. Her relationship with her boyfriend is tumultuous and violent; treatment notes from psychotherapy sessions state that she hits him and is often angry with him. Treatment notes also state that she avoids people out of a concern that she will become violent toward them. She fears the strangers she encounters on public transportation. She was fired from her last job as a home health aide and testified that, while working there, she worried she would intentionally harm the people in her care. These limitations are greater than moderate; they show marked difficulties in maintaining social functioning.[3]

Because both 12.06A and 12.06B are satisfied, Torres meets the criteria for listing 12.06 and is disabled.

## C. Remand for Calculation of Benefits

The ALJ's errors in this case flow chiefly from failure to develop the medical

---

[3] The ALJ placed great emphasis on a one-week vacation to Pennsylvania that Torres took with her boyfriend. The record does not indicate what transpired during that week, and, in any event, that fact is insufficient to overcome the weight of the evidence showing that Torres had marked difficulties maintaining social functioning.

record.  However, additional records submitted to the Appeals Council conclusively establish Torres's entitlement to benefits, and remand for further proceedings would therefore serve no purpose.  "Because the record provides persuasive proof of plaintiff's disability, [and] proper application of the legal standards would not contradict the weight of this evidence in the record, . . . 'the proper course of action is to reverse the ALJ Decision and 'remand the matter to the Commissioner for a calculation of disability benefits.'" *Henningsen v. Comm'r of Soc. Sec. Admin.*, 111 F. Supp. 3d 250, 273 (E.D.N.Y. 2015) (quoting *Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000)).

This is especially so considering the long delay since Torres applied for benefits.  Nearly five years have passed since she submitted her application.  During that time, she waited seven months for a decision from her first ALJ only to be asked to return for a second hearing before a new ALJ because the first one had left the Administration.  It would be contrary to the purpose of the Social Security Act to extend that delay by remanding for further proceedings, which, as discussed above, are not necessary. *See Finnegan v. Berryhill*, 2017 WL 4990565, at *5 (E.D.N.Y. Oct. 30, 2017) (noting need to combat long delays in processing social security cases).

### III.

For the foregoing reasons, the Commissioner's motion is denied, Torres's motion is granted, and the case is remanded for the calculation of benefits.

**SO ORDERED.**

/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 22, 2017